IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SARA TAYLOR, on behalf of herself and others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BRUCE FINK, D.D.S., P.C.<br><br>*Defendant*. | Case No.: 25-cv-3099<br><br>CLASS ACTION<br>JURY DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Plaintiff hereby responds in opposition to Defendant's Motion to Dismiss Class Action Complaint and in support thereof States as follows:

**INTRODUCTION**

Bruce Fink asks this Court to dismiss a well-pleaded TCPA class action by relying on a disputed piece of evidence and an affirmative defense that Plaintiff had no obligation to anticipate. His motion fails for three independent reasons.

First, a motion to dismiss under Rule 12(b)(6) cannot rely on evidence outside the pleadings. Yet that is exactly what Fink does. He attaches a purported consent form to his motion and asks the Court to treat it as dispositive. But Rule 12(d) prohibits that approach unless the Court converts the motion into one for summary judgment—and even then, only after giving the parties fair notice and an

opportunity to present evidence. Neither exception to this rule—the incorporation-by-reference doctrine or judicial notice—applies here.

Second, consent is an affirmative defense. A plaintiff has no duty to plead around it unless her complaint affirmatively alleges facts establishing consent. Plaintiff does the opposite. She alleges that she never consented to receive calls from Fink and never did business with him. These allegations are more than sufficient at the pleading stage.

Third, even if the Court considers the consent theory Fink advances, his showing falls short. The document he relies on does not name him, does not name any seller, and does not satisfy the TCPA's strict requirements for prior express written consent. The FCC's rules—and the courts that apply them—are clear: a consumer must be informed of the specific seller who will be calling. That did not happen here.

At this stage, the question is not whether Plaintiff will ultimately prevail. It is whether her complaint plausibly alleges a violation of the TCPA. It does. Fink's motion should be denied in its entirety.

## ARGUMENT

**1. Defendant's Motion misapplies Rule 12(b)(6) and improperly relies on evidence outside of the pleadings.**

A 12(b)(6) motion may not rely on evidence outside the pleadings. Under

Rule 12(d) of the Federal Rules of Civil Procedure, when ruling on a Rule 12(b)(6), a court generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment, and if it treats the motion as one for summary judgment, the court must give a reasonable opportunity for the parties to present all evidence that is relevant to the motion. Fed. R. Civ. P. 12(d). *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024). There are two exceptions to this conversion rule—neither of which apply here: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Circuit 2023). Defendant does not ask the Court to take judicial of any facts. The incorporation-by-reference doctrine requires that the document is central to the plaintiff's claims and that the document be undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). As noted below, the authenticity of the consent document is disputed and even if it were not, the alleged consent is deficient as a matter of law and did not authorize telemarketing from Fink.

2. **Consent is an affirmative defense that Plaintiff has no obligation to anticipate or plead around.**

Consent is an affirmative defense—not an element of a TCPA claim—that Plaintiff has no obligation to anticipate, address, or plead around. *Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1317 n.15 (N.D. Ga. 2016). ("[e]xpress consent is not an element of a TCPA plaintiff's *prima facie* case,

but rather is an affirmative defense for which the defendant bears the burden of proof."). A motion to dismiss under Rule 12(b)(6) based on an affirmative defense is appropriate only when the face of the complaint affirmatively establishes every element of that defense. "[T]he existence of an affirmative defense will not support a motion to dismiss." *Hunt v. Aimco Properties, L.P*., 814 F.3d 1213, 1225 n.8 (11th Cir. 2016); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). That is a narrow exception, and it does not apply here.

Plaintiff's complaint contains no concession that she consented to receive telemarketing. Quite the opposite: it expressly alleges that Plaintiff "never consented to receive telemarketing calls from the Defendant" and that she "never did any business with Defendant." ECF No. 1 ¶¶23–24. These allegations directly contradict any claim of consent and preclude dismissal at the pleading stage. *See Bray v. PNC Bank, N.A.,* 196 F. Supp. 3d 1282, 1289 (M.D. Fla. 2016) (stating that sufficiency of plaintiff's allegations regarding lack of consent were not before the court on a motion to dismiss); *Brown v. Account Control Tech., Inc.*, No. 1362765, 2014 U.S. Dist. LEXIS 188807, 2014 WL 11706429, at *4 (S.D. Fla. Mar. 28, 2014) (affirmative defense of prior express consent "is irrelevant at this stage").

Where, as here, the complaint denies the factual basis of an affirmative defense, resolution must await summary judgment or trial—not a motion to dismiss.

### 3. The purported consent that Fink relies on is legally and factually deficient.

Fink relies on an alleged consent received from a person named "Missie Gosset" by Apex Dental, LLC; this reliance is misplaced for several reasons. First, Ms. Taylor never clicked on an Apex Dental advertisement or provided her phone number as alleged. Second, even if she had, that consent would be deficient as a matter of law; the TCPA and its accompanying regulations prohibit sellers, such as Bruce Fink, from making telephone solicitations to "residential telephone subscribers" who have listed their telephone numbers on the National DNC Registry. *See* 47 C.F.R. § 64.1200(e), citing 18 F.C.C. Rcd. 14014, 14032, 14043 (2003); 47 U.S.C. §227(c)(5). Telemarketing calls to numbers listed on the DNC Registry are permissible only where the consumer has previously provided the telemarketer with his prior express *written* permission consenting to receive telemarketing calls from a *specific* "seller." *See* 47 C.F.R. § 64.1200(c)(2) (prohibits initiating any telephone solicitation to a "residential telephone subscriber" registered on the national do-not-call registry without a signed agreement authorizing receipt from a specific seller). *See* 47 C.F.R. § 64.1200(e) (citing 18 F.C.C. Rcd. 14014, 14032, 14043 (2003).

Fink does not allege that Taylor provided him with "prior express written consent," which the FCC defines, in part, as a signed writing "that <u>clearly</u> authorizes <u>the seller</u> to deliver or cause to be delivered to the person called advertisements or

telemarketing messages[.]" 47 C.F.R. § 64.1200(f)(9) (emphasis added). Here, Defendant does not allege or argue that Ms. Taylor provided Bruce Fink with express written consent to be contacted by him. Even if it did, Ms. Taylor never submitted her telephone number to Apex Dental or any online questionnaire related to dental work. She is not Missie Gosset. She never authorized Missie Gosset to act on her behalf. Indeed, she does not know Missie Gosset or any person purporting to be her.

Congress enacted the TCPA to prevent "intrusive nuisance calls" to consumers' telephones that it determined were "invasive of privacy." *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 371 (2012). A defendant who asserts a consent defense bears the burden to prove with clear and convincing proof that legally valid consent was obtained and in February of 2012, the Federal Communications Commission reiterated:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

Based on its submissions to the Court, Bruce Fink intends to argue that a purported internet visit to a website permitted him to place telemarketing calls to a telephone number that was also on the National Do Not Call Registry. But the

website allegedly visited does not mention Bruce Fink. Before a telemarketer like Bruce Fink can send such telemarketing calls, it must first obtain the consumer's written consent to receive such telemarketing calls from a specific seller. *See Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, *5-7 (E.D. Cal. Oct. 26, 2016) (quoting 47 C.F.R. § 64.1200(f)(8)); *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 at ¶33 (2012) (recognizing that consent must include clear and conspicuous disclosure that the consumer is consenting to receive future telemarketing calls from a specific seller). The rationale for this rule is obvious. Without naming a specific seller, a telemarketer could rely on any website in which the called party consented to future contact from any unspecified individual in order to sidestep the National DNC registry for any seller it subsequently engages with.

The regulations define "seller" as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 1200.64(f)(9). *See* 18 F.C.C. Rcd. 14014, 14032, 14043 (2003). As a matter of law, Fink's purported consent fails to provide the "prior express written consent" required by the TCPA because it does not clearly authorize calls made on behalf of Defendant. Indeed, another court examining similar "opt in" language on a similar website in a case concerning calls made by a vendor held that such language

does not constitute prior express written consent under the TCPA. *See Williams v. Pillpack, LLC,* 2021 U.S.Dist. LEXIS 27496 *14-15 (W.D.WA. February 12, 2021) (certifying a TCPA class action and noting the TCPA disclosure relied upon did not disclose the defendant as the "seller").

Recognizing the strict requirement that a consumer must be specifically informed of any entity that is going to be contacting a number that a consumer has placed on the National Do Not Call Registry, a Court recently entered partial summary judgment *on behalf of a plaintiff* on identical "Marketing Partners" language as the website allegedly visited here in *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *20-25 (D. Mass. Dec. 3, 2021):

> Even if plaintiff had visited the Snappy Auto website … [t]he consent form that defendant claims supplied plaintiff's consent was not TCPA-compliant. First, the form does not mention defendant or its clients by name. Defendant cites its 30(b)(6) deponent's statement that the phrase "marketing partners" on that form referred to defendant, but that is contradicted by his further testimony that defendant does not have a contract with the company (AutoInsurQuotes.com) named in the consent form and that he—as defendant's senior manager of data partnerships—had never heard of the company. The form also contained a telephone number for an entity that was not associated with Snappy Auto, AutoInsurQuotes.com, or defendant. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (stating that prior express consent "must be evidenced by a signed, written agreement *between the consumer and seller*" (emphasis added)); *Mattson v. New Penn Fin.*, No. 3:18-cv-00990, 2020 U.S. Dist. LEXIS 197955, at *12 (D. Or. Oct. 25, 2020) ("[T]he regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the [*24] *specific* telemarketer that makes the call before the

telemarketer can call a number listed on the DNCR." (emphasis added) (citing 47 C.F.R. § 64.1200(c)(2)(ii)))….

Accordingly, even assuming plaintiff had visited the website, no reasonable jury would credit defendant's claim to be a "marketing partner" with the company listed on the consent form.

4. **Discovery will be used to determine the other members of the putative class.**

While Defendant insists that the Plaintiff cannot satisfy Rule 23 with respect to her proposed class, certification of TCPA class actions is relatively commonplace, as the elements needed to prove a violation of the TCPA and its damages scheme lend themselves naturally to class-wide proof. As the Fourth Circuit recently explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have certified numerous class actions based on violations of the TCPA. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context:

> This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member

is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims. Second, in finding federal courts have concurrent jurisdiction with state courts over TCPA actions, the Supreme Court effectively found that Congress did not intend state small claims courts to be the sole forum for TCPA claims. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 751, 181 L. Ed. 2d 881 (2012).

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275, 14-15 (N.D. Ohio Dec. 1, 2014). As another federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, 2015 U.S. Dist. LEXIS 129495, 37-38 (S.D. Cal. Sept. 24, 2015).

At bottom, given that courts regularly certify TCPA class actions, Defendant's suggestion that Plaintiff cannot meet the elements necessary to certify his proposed TCPA class is not credible. Indeed, discovery will be necessary to identify the other members of the putative class. "[A] list of phone numbers may very well bear direct

relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class). Such information also speaks to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, commonality, and predominance. *Warren v. Credit Pros Int'l Corp.,* No. 3:20-cv-763-TJC-MCR, 2021 U.S. Dist. LEXIS 79150, at *21 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members, because Defendant has not moved to bifurcate class and merits discovery and such information is relevant both to the merits of Plaintiff's claims and to the numerosity and commonality requirements in Rule 23, Fed.R.Civ.P.").

As one Court summarized when granting a similar motion to compel for the calling records in a telemarketing class action involving allegations of calls to telephone numbers on the National Do Not Call Registry:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an

automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Communications Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Ct. 2015). Here, like in *Mey*, Plaintiff's expert will perform an analysis of Defendant's call records to determine which telephone numbers were on the National Do Not Call Registry and/or otherwise satisfy the requirements for membership in the class.

The Defendant claims to have an affirmative defense for the Plaintiff's claims. While the Plaintiff disagrees, it will be discovery that will reveal this information. It is not properly the subject of a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Class Action Complaint should be denied in its entirety.

| Dated: July 15, 2025 | Respectfully Submitted: |
|---|---|
|  | */s Anthony I. Paronich* <br> Anthony I. Paronich <br> Paronich Law, P.C. <br> 350 Lincoln Street, Suite 2400 <br> Hingham, MA 02043 <br> [ (617) 485-0018 <br> anthony@paronichlaw.com <br><br> Valerie Chinn, Georgia Bar No. 248468 |

|  | CHINN LAW FIRM, LLC<br>245 N. Highland Ave.<br>Suite 230 #7<br>Atlanta, GA 30307<br>404-955-7732<br>vchinn@chinnlawfirm.com |
|---|---|